United States District Court
Southern District of Texas
**ENTERED**
July 16, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHISN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MILAD M.R.[1],<br>Petitioner, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 1:26-cv-328 |
| WARDEN, PORT ISABEL DETENTION CENTER, *et al*.,<br>Respondents. | §<br>§<br>§<br>§ | |

**REPORT AND RECOMMENDATION**
**TO GRANT PETITIONER'S WRIT OF HABEAS CORPUS AND RECOMMENDING PETITIONER'S RELEASE FROM DETENTION**

## I. Synopsis

Petitioner argues his detention is unlawful because it (1) exceeds the presumptively reasonable period set out in *Zadvydas* and (2) there is no significant likelihood of removal in the reasonably foreseeable future. The Court agrees. The Government detained Petitioner for over 10 months without deportation after securing a final order of removal; this violates Petitioner's constitutional rights. Thus, it is RECOMMENDED that the Court (1) grant the Petition for Writ of Habeas Corpus; (2) order Petitioner's release from Respondents' custody; and (3) deny Respondents' Motion for Summary Judgment.

## II. Jurisdiction and Venue

Petitioner challenges the constitutionality of his post-removal-period detention by arguing that the Government has not shown there is a significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); 28 U.S.C. §

[1] Due to significant privacy concerns in immigration cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to the petitioner only by first name and last initial.

1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution."). Given Petitioner's constitutional challenge to post-removal-period detention[2], the Court has subject matter jurisdiction to entertain this claim.

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." *See Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 495 (1973). Petitioner was detained at Port Isabel Detention Center in Cameron County, Texas when he filed the operative Petition in this case. Dkt. No. 1 at 1. The Center lies within Cameron County, a county served by the Brownsville Division of the United States District Court for the Southern District of Texas.

On July 10, 2026, the Petitioner notified the Court he was transferred to the Torrance County Detention Facility in New Mexico on June 30, 2026. Dkt. No. 16. Petitioner's case was fully briefed and ripe for this Court's consideration pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) on June 18, 2026. Movement of the Petitioner does not divest this Court with jurisdiction to release Petitioner under *Zadvydas* as recommended. When the Government moves a habeas petitioner after properly filing a petition naming an immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the Petitioner's release. See *Ex Parte Endo*, 323 U. S. 283, 307 (1944); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). Accordingly, jurisdiction and venue are proper in this Court and division.

## III. Factual History

Petitioner is a national of Iran. Dkt. No. 1 at 11. On January 19, 2025, Petitioner entered the United States. Dkt. No. 1 at 11; Dkt. No. 11-1 at 1. Petitioner requested asylum and Withholding of Removal under the Convention Against Torture, claiming fear of returning to Iran. [3] Dkt. No. 1 at 11; Dkt. No. 11-1 at 1-2. On or about February 2, 2025,

[2] Petitioner does not challenge the validity of his order of removal.

[3] Petitioner states he requested asylum on February 14, 2025. Dkt. No. 1 at 11. The Government states Enforcement and Removal Operations (ERO) Harlingen submitted Petitioner's credible fear triggering documents to USCIS on January 25, 2025. Dkt. No. 11-1 at 2. Petitioner did not oppose the Government's statement of the facts in their Emergency Amended Petition. Moreover, the exact date asylum was requested is not material to Petitioner's legal claim.

the U.S. Citizenship and Immigration Services (USCIS) issued a positive credible fear determination.[4] Dkt. No. 11-1 at 2. On August 13, 2025, the Immigration Judge (IJ) ordered Petitioner removed to Iran, but provided that the removal be withheld and did not designate another country for removal. *Id.*; Dkt. No. 14 at 7. Petitioner and the Department of Homeland Security (DHS) did not file an appeal of the IJ's decision, so Petitioner's removal order became administratively final on August 13, 2025. Dkt. No. 11-1 at 2. *See* 8 C.F.R. §§ 241.1, 1241.1(e). The 90-day removal period under 8 U.S.C. § 1231(a)(1)(A) ended on November 11, 2025. The 180-days of detention mark passed on February 9, 2026.

On March 13, 2026, Petitioner was served with a Decision to Continue Detention letter determining to maintain Petitioner's custody. Dkt. No. 1 at 13; Dkt. No. 11-1 at 3.

The Government represents that from late June 2025 to March 2026 it contacted several third countries in an effort to effectuate Petitioner's removal. In mid-October of 2025, ERO submitted a Request for Acceptance of Alien (Form I-241) to the Consulates of Canada, Panama, and Costa Rica. Dkt. No. 11-1 at 2. At the end of October 2025, the Consulates of Panama and Costa Rica denied the acceptance of the Petitioner to their respective countries. *Id*. In early January of 2026, ERO submitted another Request for Acceptance of Alien (Form I-241) to the Consulate of Canada. *Id*. In February of 2026, ERO submitted a Request for Acceptance of Alien (Form I-241) to the Consulates of Brazil and Turkey. *Id.* at 3. In early March 2026, the Consulate of Turkey informed ERO Petitioner would not be permitted to enter Turkey. *Id.* A few days later, on March 7, 2026, ERO submitted yet another Request for Acceptance of Alien (Form I-241) to the Consulate of Honduras, which appears to still be pending. *Id.*

## IV. Procedural History

On March 19, 2026, Petitioner initially filed his Petition for a Writ of Habeas Corpus in the Brownsville Division of the Southern District of Texas, and he appeared pro se. Dkt.

---

[4] Petitioner's credible fear interview likely occurred on or about February 2, 2025, the day the USCIS issued a positive credible fear determination. Dkt. No. 11-1 at 2. However, the exact date is not material to Petitioner's legal claim.

No. 1. About three months later, on June 5, 2026, Petitioner filed an Emergency Amended Petition. Dkt. No. 14. In the original Petition, Petitioner argues his detention violates the statutory limitations of 8 U.S.C. § 1231(a)(6) and his constitutional due process rights because there is no significant likelihood of removal in the reasonably foreseeable future. Dkt. No. 1 at 14; Dkt. No. 14 at 9. In his amended petition, Petitioner also argues that a removal to a third country without an opportunity to be heard on a fear-based claim would violate his constitutional due process rights. Dkt. No. 14 at 17. Petitioner requests his immediate release from Respondent's custody under an order of supervision. Dkt. No. 1 at 16.

The Court ordered the Government to Show Cause as to why the Writ should not be granted, Dkt. No. 7, and the Government responded with a Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment. Regarding Petitioner's indefinite detention claims, the Government maintained "that DHS is working diligently to effectuate Petitioner's removal." Dkt. No. 11 at 6. The Government also argues Petitioner is delaying the removal process due to Petitioner's "failure to comply with the special review procedures in C.F.R. § 241.13 and failure to assist ICE with obtaining a travel document or a visa to another country." *Id.*

## V. Applicable Law

### a. <u>28 U.S.C. § 2241</u>

The District Court may grant the writ of habeas corpus under 28 U.S.C. § 2241 when Petitioner's custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner must show that his or her custody violates federal law. *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (stating that habeas relief cannot be issued unless Petitioner alleges "that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." (quoting *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985) (per curiam))).

b. INA 8 U.S.C. § 1231 and *Zadvydas*

The Immigration and Nationality Act denotes a "removal period" in which the Attorney General "shall remove the alien from the United States within a period of 90 days" when an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). During that 90-day-removal-period, an alien must be detained per the statute. 8 U.S.C. § 1231(a)(2)(A).

The statute is implicitly limited by the "Constitution's demands." *Zadvydas*, 533 U.S. at 689. The "Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person ... of ... liberty ... without due process of law.' " *Zadvydas*, 533 U.S. at 690. This constitutional concern becomes increasingly acute when detention lasts for more than six months. *Id.* at 701. For this reason, the United States Supreme Court created a framework in *Zadvydas v. Davis* for a Petitioner to challenge the constitutionality of his or his continued detention after a six-month period. *Id. See also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) ("Zadvydas thus created a '6–month presumption' of the validity of detention under § 1231, after which an alien could attack the reasonableness of his continued detention."). "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Id.* It is not the case that if an alien is not removed, then they must be released after six months. *Id.* at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). If the court determines "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

c. 8 C.F.R. § 241.13

Federal regulations "establish special review procedures for those aliens who are subject to a final order of removal and are detained[.]" 8 C.F.R. § 241.13(a). Notably, "[a]n eligible alien *may* submit a written request for release to the [Headquarters Post-Order Detention Unit] asserting the basis for the alien's belief that this is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1) (emphasis added). After receiving the initial written request, the Headquarters Post-Order Detention Unit (HQPDU) conducts a review, which includes, among other procedures,

permitting the alien an opportunity to respond and possibly granting an interview with the alien. 8 C.F.R. § 241.13(e)(1-6). HQPDU must issue a written decision regarding "whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances" and provide the decision to the alien. 8 C.F.R. § 241.13(g).

A determination that "there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, despite the Service's and the alien's efforts to effect removal," absent special circumstances defined in the regulation, requires arrangements be made promptly to release the alien subject to "appropriate conditions." 8 C.F.R. § 241.13(g)(1). The regulations spell out the conditions of release. 8 C.F.R. § 241.13(h). A determination that there is a significant likelihood that the alien will be removed in the reasonably foreseeable future results in a denial of the alien's request. 8 C.F.R. § 241.13(g)(2). There is no avenue to pursue an administrative appeal of this denial. *Id.*

d. Standard of Review: Motion for Summary Judgment

Summary judgment is appropriate when the moving party (the Government) establishes there exists no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The movant "can show there's no material dispute if he demonstrates that the [non-movant] could not prevail even if each factual question were resolved in their favor." *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 950 (5th Cir. 2022). A "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

If the non-movant (Petitioner) would bear the burden of proof at trial, the moving party may satisfy its summary judgment burden "by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Ortega Garcia v. U.S.*, 986 F.3d 513, 533 (5th Cir. 2021). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.*

"All facts must be viewed in the light most favorable to the nonmovant and all justifiable inferences must be drawn in his favor." *Crane v. City of Arlington, Texas*, 50 F.4th 453, 461 (5th Cir. 2022). Thus, factual controversies are resolved in favor of the non-movant, "but only when the there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021). In the "absence of any proof," the court cannot and will not assume that the non-moving party could or would prove the necessary facts. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).

"A court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." *Chacon v. Copeland*, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (internal quotations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.*

Finally, administrative remedies should be exhausted before a habeas action is brought under 28 U.S.C. § 2241. See *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion is required because it protects administrative agency authority, promotes judicial efficiency, and "acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992) (superseded by statute on other grounds).[5]

## VI. Analysis

The Government presents two arguments pertaining to the Petitioner: (1) Petitioner has not cooperated with ICE to secure his removal because he has not complied with special

[5] *See Kurdobadze v. Venegas, et al.,* No. 1:25-CV-00157, 2026 WL 1622834, at *4 (S.D. Tex. Apr. 24, 2026) (Torteya, J.), report and recommendation adopted sub no;. *Kurdobadze v. Venegas*, No. 1:25-CV-157, 2026 WL 1641523 (S.D. Tex. June 5, 2026) (Rodriguez, J.).

review procedures required of post-order aliens. (2) Petitioner has not met his initial burden of showing there is no significant likelihood that he will be removed from the United States in the near future. Dkt. No. 11 at 4-5. For the reasons discussed below, the Court finds the Government's arguments unconvincing.

a. Petitioner has exhausted his administrative remedies.

First, the Government argues that the Court should deny Petitioner's Writ of Habeas Corpus because Petitioner has not submitted a written claim to HQPDU asserting there is no likelihood of his removal in the foreseeable future, as required under 8 C.F.R. § 241.13(d)(1). *Id*. However, the vehicle for pursuing an administrative appeal is phrased in the permissive: "An eligible alien *may* submit a written request for release." 8 C.F.R. § 241.13(d)(1) (emphasis added); see *Tapia v. Watkins*, No. 1-11-102 2011 WL 13340417 at *1 n.1 (S.D. Tex. 2011) (Morgan, J) (noting that the court was not persuaded that the petitioner was required to exhaust administrative remedies prior to seeking habeas relief). "Where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute on other grounds).[6]

Second, Petitioner appears to have received decision letters sufficient to satisfy the exhaustion requirement. On March 13, 2026, Petitioner was served with a Decision to Continue Detention letter. Dkt. No. 11-1 at 3. In the letter, ICE states that it reviewed Petitioner's custody status and rendered a decision based on his file, consideration of the information he submitted to ICE's reviewing officials, and the "factors for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g)." Dkt. No. 1-1 at 22. ICE's decision letters appear to effectuate the procedural goal of 8 C.F.R. § 241.13(g). 8 C.F.R. § 241.13(g) (The HQPDU's decision will be based on "the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances.").[7]

---

[6] *supra,* n. 5.

[7] *supra,* n. 5.

b. Petitioner has been in detention beyond the removal period and removal is not reasonably foreseeable.

The facts material to Petitioner's *Zadvydas* claim relate to the length of Petitioner's detention following the day his order of removal became administratively final and the Government's efforts to designate a third country to which Petitioner may be removed. The day the order of removal because administratively final, August 13, 2025, is undisputed. Dkt. No. 11 at 2. Additionally, the Government does not contest that it has not secured a third country willing to accept Petitioner's removal. *Id*. [8] Because the facts material to this case are undisputed, the issue in this case centers around whether there is a significant likelihood Petitioner will be removed in the reasonably foreseeable future.

Petitioner's current detention has surpassed six months. While the presumptively reasonable period under *Zadvydas* is over, Petitioner "bears the initial burden of proof in showing that no such likelihood of removal exists" *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (citing *Zadvydas*, 533 U.S. at 701).

In the present case, Petitioner argues there is no significant likelihood of removal in the reasonably foreseeable future, in part, because he has been granted withholding of removal to Iran and he does not have legal status in any other country. Dkt. No. 1 at 7. Additionally, Petitioner argues that despite multiple attempts, no third country has accepted him. *Id*. at 6. The undisputed facts in the record show that Petitioner does not have legal status in any other country, and even over six months after Petitioner's order of removal became final, Respondents do not represent that a third country has been designated for Petitioner's removal. For these reasons, the Court finds Petitioner carried his initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. As a result, the Government must now "respond with evidence sufficient to rebut" this showing. *Zadvydas*, 533 U.S. at 701.

[8] The Court understands that not all the facts in the record are undisputed exactly, but the Court finds that the facts material to Petitioner's *Zadvydas* claim are undisputed, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The issue is only that the parties have differing arguments as to how the facts apply to the law.

The Government maintains that the Petitioner has not met the initial burden of showing that there is no significant likelihood Petitioner's removal will occur in the near future. Dkt. No. 11 at 4. The Government points out that DHS has requested numerous countries accept Petitioner's removal. *Id*. at 5. The Government also argues that Petitioner has prevented ICE from executing his removal order, and this is cause for tolling the detention period. *Id*. at 4-5. To support the tolling argument, the Government cites the statutory provision which allows the removal period to extend beyond 90 days if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C). However, even if the removal period is or was extended [9], the Court relies on Supreme Court jurisprudence, which allows Petitioner to attack the constitutionality of his detention under §1231 after a six-month period. *Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543.

The Court turns to the Government's updates concerning its attempts to remove Petitioner to a third country. As of yet, the Government has not progressed beyond making requests to third countries. The Government has only requested third countries to accept Petitioner, and at least three of those countries declined to accept Petitioner. The Court considers these facts insufficient to demonstrate that there is a significant likelihood the Government will remove Petitioner in the reasonably foreseeable future. *See Mogos v. Thompson*, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026) (finding a Government declaration representing that ICE is actively working to secure removal to a third country did not carry the Government's burden under the facts of the case). The Government's mere request for acceptance, even if made to numerous countries, does not show Petitioner will be removed in the reasonably foreseeable future. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705 (W.D. Tex. Oct. 24, 2025) (finding that

[9] The Court does not reach a conclusion on whether Petitioner's conduct can or does constitute failing or refusing to make timely application in good faith for travel or other documents necessary to his departure, or whether his conduct can or does constitute conspiring or acting to prevent his removal subject to an order of removal.

"Respondents cannot carry their burden [under *Zadvydas*] with the outstanding requests, alone."); *Gurung v. Warden, S. Texas Ice Processing Ctr.*, 2026 WL 93145, at *7 (W.D. Tex. Jan. 6, 2026) (finding the Government's failure to identify a country willing to accept Petitioner particularly weighty "[b]ecause Petitioner cannot be removed to his country of origin[.]")).

Under these circumstances, the Court finds the Government did not carry its burden under *Zadvydas*. Moreover, the Court finds there is no significant likelihood of removal in the reasonably foreseeable future in Petitioner's case. Consequently, Petitioner's detention is unreasonable and no longer authorized by statute. *Zadvydas*, 533 U.S. at 699-700. This action is also a violation of the due process clause. *Villanova v. Tate*, 801 F. Supp.3d 694, 704 (S.D. Tex. Sept. 2025) (Hittner, J.). Because of this finding, the Court finds Respondents are not entitled to judgment as a matter of law.

The Court is mindful that the government has the right to enforce Petitioner's Order of Removal. *Id.* However, when there is no significant likelihood of removal in the reasonably foreseeable future, it is impermissible for the Government to continue to detain Petitioner indefinitely. *Id.* Furthermore, the Court notes that the choice at issue here "is between imprisonment and supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 698. Considering this, release from detention under the proper release conditions is recommended.[10]

Because the Court recommends granting habeas relief under Petitioner's challenge to his post-removal-period detention, the Court finds no need to address any claim or challenge not addressed in this report and recommendation.[11] *Id.*

---

[10] *See Mogos v. Thompson*, 2026 WL 475079, at *6 ("*Zadvydas* requires Petitioner's release from [his] unlawful detention.").

[11] Petitioner raised a claim concerning "third country removal without opportunity to seek protection." Dkt. No. 14 at 7. Although the court does not consider this claim and reach a finding on the claim, it is noted the District Court has previously considered the issue regarding notice requirements to a Petitioner prior to effecting a third-country removal in *Aranda Gomez v. Bondi*, *et al.*, No. 1:25-CV-258, 2026 WL 1623429, at *10 (S.D. Tex. Feb. 20, 2026) (Rodriguez, J.) (ordering that "Respondents may not remove Petitioner to the designated third country less than seven days after providing him with the notice of the country to which he will be removed[.]")).

## VII. Recommendation

It is RECOMMENDED that the Court (1) GRANT Petitioner's Writ of Habeas Corpus; (2) RELEASE Petitioner from detention subject to supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5; and (3) DENY Respondent's Motion for Summary Judgment (Dkt. No. 21).

## VIII. Notice to the Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge assigned to this case. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on July 16, 2026.

Karen Betancourt

Karen Betancourt
United States Magistrate Judge